IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 19, 2021

## JOSHUA NATHAN BROWN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**Nos. 18831 & 18836     M. Wyatt Burk, Judge**

_____

### No. M2020-01099-CCA-R3-PC

_____

The Petitioner, Joshua Nathan Brown, appeals from the denial of his petition for post-conviction relief, wherein he challenged his guilty-pleaded convictions for evading arrest through the use of a motor vehicle creating a risk of death or injury to others, possession of a firearm by a convicted drug felon, and possession of a Schedule IV controlled substance with the intent to sell. In this appeal as of right, the Petitioner argues that his trial counsel was ineffective for failing to file a motion to recuse the district attorney general's office after his previous attorney in this case was hired by that office. Following our review of the record, we affirm the post-conviction court's judgment denying relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Jonathon D. Fagan, Nashville, Tennessee, for the appellant, Joshua Nathan Brown.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

On June 18, 2018, a Bedford County grand jury returned two separate indictments against the Petitioner, charging him with multiple offenses following his fleeing from the police and his later arrest where he was in possession of a firearm and alprazolam pills. In Case 18831, the Petitioner was charged in count 1 with evading arrest through the use of a motor vehicle creating a risk of death or injury to others, and in count 2 with driving while his license was suspended, second offense. See Tenn. Code Ann. §§ 39-16-603, 55-50-

504. In Case 18836, the Petitioner was charged in count 1 with possession of a firearm with the intent to go armed during the commission of a dangerous felony, and at the time of the offense, the Petitioner had a prior felony conviction; in count 2 with possession of a firearm by a convicted drug felon; in count 3 with possession of a Schedule IV controlled substance (alprazolam) with intent to sell; and in count 4 with possession of a Schedule IV controlled substance (alprazolam) with intent to deliver. See Tenn. Code Ann. §§ 39-17-417, -1307, -1324.

On November 1, 2018, the Petitioner entered a guilty plea in both cases. More specifically, relative to Case 18831, he pled guilty in count 1 to evading arrest through the use of a motor vehicle creating a risk of death or injury to others, and he agreed to a sentence of seven years at thirty-five percent. Count 2 was dismissed. Relative to Case 18836, the Petitioner pled guilty in count 1 to the amended charge of possession of a firearm by a convicted drug felon and in count 3 as charged to possession of a Schedule IV controlled substance (alprazolam) with the intent to sell. He agreed to a sentence of seven years in count 1 and a sentence of five years in count 3, to be served concurrently with one another at thirty-five percent. Counts 2 and 4 were dismissed. By agreement, the seven-year sentences in Cases 18831 and 18836 were to be served consecutively to one another, for a total effective sentence of fourteen years. This effective sentence was to run concurrently with the Petitioner's previously-imposed federal sentence of fifty-one months for possession of a firearm by a convicted felon.[1]

At the November 1, 2018 guilty plea submission hearing, the trial court first provided some procedural background, noting that the case had previously been set for disposition on October 19, 2018. Though the parties initially believed they had reached an agreement to be entered that day, an issue arose with the concurrent or consecutive nature of the Petitioner's federal sentence. Because trial counsel was not present with the Petitioner on October 19 due to a scheduling conflict, and the Petitioner was represented by another member of trial counsel's firm, the trial court reset the case so that trial counsel could continue negotiations with the State.

The Petitioner indicated at the November 1 hearing that he believed the agreement had been finalized on October 19. The Petitioner asked the trial court why he was not allowed to be present in the courtroom on October 19 to "get a full understanding [of] exactly what was going on" regarding negotiations. The trial court responded that the only thing requested from substitute counsel that day was a continuance and that the trial court granted the request out of fairness to the Petitioner. The prosecutor indicated that the initial agreement between the parties called for consecutive service of the federal sentence but that it was brought to his attention that there was language in the federal order indicating that the federal sentence was to be served concurrently with any State-imposed sentence,

---

[1] This federal conviction also resulted from the Petitioner's arrest in this case.

- 2 -

which led to the case's being continued. The Petitioner stated that "there was a significant difference in the time range also from different plea agreements." The Petitioner averred that he "just didn't want to regret" moving forward with his plea without "trying to get a full understanding on everything."

The trial court then continued with the guilty plea submission. The Petitioner said that he was not suffering from any mental health problems and was not under the influence of drugs or alcohol. The Petitioner confirmed that he had read the entirety of the plea documents before he signed them and had no questions. The trial court reviewed the charges with the Petitioner, and the Petitioner indicated that he understood the possible ranges of punishment on each charge. In addition, the Petitioner told the trial court that he had participated in plea discussions with his attorney. The Petitioner further affirmed that he and trial counsel had reviewed "different ways" to handle the Petitioner's case, including the filing of certain motions, entering a plea, or setting the case for trial. According to the Petitioner, there were "no other avenues" available to him but to set the case for trial. Trial counsel interjected that they had "talked about filing this motion or that motion" and had discussed "filing several avenues that turned out to be dead ends."

The State said that if it proceeded to trial on case 18831, the proof would have shown that on January 31, 2017, Lieutenant Brian Crews observed the Petitioner driving a car on Belmont Avenue. Lieutenant Crews was familiar with the Petitioner and knew that the Petitioner's driver's license was suspended, so Lieutenant Crews attempted to conduct a traffic stop with a uniformed Shelbyville Police Department officer in a marked patrol car. After the patrolman turned on his blue lights, the Petitioner accelerated and sped off. A chase ensued, during which other cars were on the same roads, and the Petitioner drove as fast as ninety miles per hour in areas with a forty-five- to fifty-mile-per-hour limit. The Petitioner passed vehicles in no-passing zones. Upon stopping, the Petitioner ran by foot into the woods, and he was not found that evening. The patrol car's dashboard camera recorded the chase.

In Case 18836, the State would have shown that on February 13, 2017, members of the police department served an arrest warrant on the Petitioner after he was observed inside a local Burger King. Once the Petitioner was in custody, the officers conducted a search and found forty-nine Xanax tablets inside a clear plastic baggie in the Petitioner's front left pocket, as well as a .25-caliber pistol in the Petitioner's back right pocket. At that time, the Petitioner had two prior felony drug convictions.

The trial court explained the elements of the offenses charged, and the Petitioner said that he had discussed those elements with his attorney and that he understood. The Petitioner also agreed that the facts provided by the State were correct. The Petitioner affirmed his desire to enter a plea. He confirmed his understanding that the convictions could later be used against him to enhance punishment and that he was waiving his rights

to a jury trial, to have all elements found by a jury beyond a reasonable doubt, to testify in his own defense, to subpoena and cross-examine witnesses, and to an appeal. The Petitioner affirmed that no one had threatened him or made him any promises. The Petitioner stated that he had no complaints with trial counsel and was satisfied with his efforts. The trial court accepted the pleas, concluding that the Petitioner understood the consequences of his pleas; that he was entering his pleas knowingly, voluntarily, and intelligently; and that there was a factual basis to support the pleas.

The Petitioner's pro se petition for post-conviction relief was filed on November 4, 2019.[2] After appointment of counsel, the Petitioner filed an amended petition. In the amended petition, the Petitioner argued that (1) trial counsel was ineffective for "failing to have [the] Petitioner present when [the] Petitioner's original [d]isposition date . . . of October 19, 2018, was continued to November 1, 2018, without knowledge or consent of the Petitioner, who was prepared to sign and execute [the] plea agreement with the State on October 19, 2018"; (2) trial counsel was ineffective for "failing to properly advise [the] Petitioner of the legality of sentence he was agreeing to on the subsequent reset [d]isposition date of November 1, 2018, specifically [c]ount 1 of Case 18836 of the indictment, [p]ossession of a [f]irearm by a [c]onvicted [d]rug [f]elon"; (3) trial counsel was ineffective for "failing to file any motions on behalf of [the] Petitioner with the [trial c]ourt prior to [d]isposition and to properly advise [the] Petitioner of the options in motion practice available to him"; and (4) the cumulative effect of trial counsel's errors deprived the Petitioner of a fair trial.

The State filed a response in opposition on April 23, 2020. A hearing on the amended petition was held on July 17, 2020.[3] The post-conviction court asked the Petitioner to clarify the relief sought, and post-conviction counsel replied that the Petitioner wished to withdraw his guilty pleas and proceed to trial.

David Thibodeaux testified that the Public Defender's office had a legal conflict in representing the Petitioner, so he was appointed by the circuit court at arraignment to represent the Petitioner. In August 2018, Mr. Thibodeaux began negotiating for a job with the District Attorney General's Office of the 17th Judicial District, and he accepted employment with that office later that month. Thereafter, approximately six weeks into Mr. Thibodeaux's representation of the Petitioner, Mr. Thibodeaux filed a motion to withdraw from the Petitioner's case. A new attorney was appointed for the Petitioner at the Petitioner's next court date in September.

---

[2] The Petitioner indicated that he presented the petition to the appropriate prison authorities for mailing on October 30, 2019, and his verification was notarized that same day.

[3] We will limit our recount of the testimony at the hearing to the sole issue of ineffectiveness raised on appeal, that being trial counsel's failure to file a motion to recuse the district attorney general's office.

Mr. Thibodeaux confirmed that during his six weeks' representation of the Petitioner, they spoke about the facts and aspects of the case, including "important matters and details." Mr. Thibodeaux estimated that he met with the Petitioner approximately three or four times at the Bedford County Jail to discuss the Petitioner's case and the discovery materials that had been received.

Trial counsel was appointed in September 2018 to represent the Petitioner after Mr. Thibodeaux's withdrawal. Trial counsel confirmed that the Petitioner's case was originally set for disposition on October 19, 2018, and that because trial counsel was unable to attend due to a scheduling conflict, he sent his law partner as substitute counsel in his stead. At the time, trial counsel had met with the Petitioner two or three times, and trial counsel believed that an agreement was in place and that substitute counsel only needed to effectuate that agreement in court.

Substitute counsel testified that he spoke with the Petitioner in the courthouse on October 19, 2018, and that the Petitioner did not agree with the plea paperwork. Because there was no meeting-of-the-minds as to the plea agreement, the matter was reset for November 1, 2018. Trial counsel testified that at the November 1 guilty plea submission hearing, he spoke with the Petitioner regarding "the details of the changes" that had occurred between October 19 and November 1.

Trial counsel said that the Petitioner did not want to go to trial because the evidence against the Petitioner was "pretty overwhelming." Trial counsel recalled that the discovery materials included a "dashcam" video recording of the Petitioner's evading arrest from the officer, showing the events that took place during the chase, as well as a visual of the Petitioner's sitting in the driver's seat. Trial counsel also noted the circumstances of the Petitioner's arrest at the Burger King, including his possession of a firearm and Xanax pills. In addition, trial counsel recalled the Petitioner's giving a police statement following his arrest and admitting to some of the details and a recording of a jail telephone call wherein the Petitioner "made incriminating statements about his case" to a friend. Though the Petitioner was not happy with his plea agreement, the Petitioner knew what he was doing when he accepted the plea, in trial counsel's opinion.

Trial counsel did not remember filing any motions on the Petitioner's behalf and did not remember the Petitioner's asking him to file any specific motion. Trial counsel opined that no particular motions were necessary in this case given the overwhelming evidence against the Petitioner on all counts. When asked about whether he filed a motion to recuse the district attorney general's office due to the conflict of interest of Mr. Thibodeaux, trial counsel responded that he believed such a motion was unnecessary because "[i]t was [his] understanding that Mr. Thibodeaux was not going to be involved in the case in any way, shape, or form," and Mr. Thibodeaux "was solely going to be handling DUIs and similar

type offenses."[4]  Trial counsel did not inquire about the screening procedures at the district attorney general's office regarding Mr. Thibodeaux, believing Mr. Thibodeaux "to be a man of great integrity" and trusting Mr. Thibodeaux not to share attorney-client protected information.

Trial counsel affirmed that he met with the Petitioner to discuss the Petitioner's case. Trial counsel knew that the Petitioner had two prior drug convictions and explained to the Petitioner that he would be sentenced as a Range II, multiple offender.

Trial counsel indicated that he provided the prosecutor with the federal order stating that the federal sentence of fifty-one months was to run concurrently with any State-imposed sentence in these cases.  Though the State originally sought consecutive service of an effective eleven-year sentence, the State subsequently agreed to concurrent service with the federal sentence and an increased effective sentence of fourteen years.  Trial counsel confirmed that he spoke with the Petitioner's federal counsel on three or four occasions and learned that it was ultimately the Federal Bureau of Prisons' decision whether to transfer the Petitioner to a federal facility, which would "affect the true concurrent nature of it."  Trial counsel testified that he told the Petitioner that "even though the plea paperwork said it was concurrent to the federal sentence," as well as the federal order stating that service was concurrent, "there was no guarantee that the feds were going to run this the way he wanted."  According to trial counsel, the Petitioner was given this information on more than one occasion and specifically on the day he entered his pleas on November 1.

Trial counsel affirmed that if the Petitioner had been convicted of possession of a firearm during the commission of a dangerous felony as originally charged, then he would have had a mandatory minimum five-year sentence to be served at one-hundred percent and consecutively to any sentence he received for the possession of alprazolam with the intent to sell.  Through the negotiation process, trial counsel was able to work out a deal to keep the Petitioner from serving any mandatory minimum sentence or mandatory consecutive service by having the gun charge amended to possession of a firearm by a convicted drug felon, which only required service of thirty-five percent.  Trial counsel opined that this was a "major goal of the representation" of the Petitioner.

Trial counsel believed that the Petitioner had a full understanding of the nature of the indicted charges and the charges for which he was pleading guilty, as well as the

---

[4] The State objected to this line of questioning regarding filing a motion to recuse the district attorney general's office as it was not included with any specificity in the petition for post-conviction relief.  Post-conviction counsel argued that it was an appropriate because the Petitioner raised the issue of trial counsel's failure "to file any motions" in his petition.  The trial court overruled the State's objection.

sentencing ranges he faced. Trial counsel told the Petitioner that the decision was his, and his alone, regarding whether to accept the plea, though trial counsel provided his "best advice" to the Petitioner about his options.

The Petitioner testified that he was not satisfied with trial counsel's representation. Specifically, the Petitioner said that though he asked trial counsel to file several motions, trial counsel refused, saying they were not necessary. The Petitioner explained that when he "pushed the issue," trial counsel kept telling him how strong the State's case was against him and that he should not go to trial.

When asked if trial counsel told him about the potential conflict of interest with the district attorney general's office due to Mr. Thibodeaux's employment, the Petitioner said that trial counsel indicated to him that Mr. Thibodeaux would only be handling DUIs and that "it wouldn't really affect [his] case." The Petitioner indicated that he spoke "at length" with Mr. Thibodeaux and that he relayed confidential information to Mr. Thibodeaux during their discussions. According to the Petitioner, the State's knowledge of this information would have hurt his case. The Petitioner averred that he did not realize that he could ask for the district attorney general's office to recuse itself and that trial counsel never mentioned filing such a motion. The Petitioner said that he did ask trial counsel to file a motion for a change of venue but that trial counsel said it was unnecessary and it would "tick off" the trial court.

The Petitioner testified that on November 19, he told trial counsel that he wanted to go to trial. The Petitioner asserted that he was satisfied with the plea agreement he had in place on October 19 of eleven years with consecutive service to the federal sentence and that he was unsure of what had happened that day. The Petitioner maintained that he did not want the case reset and that he thought the eleven-year deal was "better" because it was a lower sentence.

The Petitioner acknowledged that he understood what he was doing when he entered his plea on November 1, 2018, and that he understood his sentence. However, the Petitioner claimed that he accepted the plea, signed the paperwork, and went through the colloquy because of trial counsel's "coercion." The Petitioner explained this coercion as trial counsel's "telling [him] how much worse it would be if [he] went to trial and that [he] had no chance" and asserted that this was the reason he ultimately decided to plead. The Petitioner indicated that he asked trial counsel several times to set the case for trial but that trial counsel kept "beating . . . into [his] head" how bad that would turn out for him; therefore, the Petitioner finally accepted the plea "because it was in [his] best interest." Because trial counsel would not file anything on the Petitioner's behalf, the Petitioner felt hopeless and believed there was no possibility of success at trial. The Petitioner also asserted that the morning of his pleas was the first time trial counsel reviewed the officer's dashboard video recording with him.

In addition, the Petitioner asserted that if the federal prison gave him credit for the time he had served in State custody, then everything would be "fine." The Petitioner confirmed that he had been told that the State had no control over what the federal officials might ultimately choose to do. The Petitioner admitted that he never really wanted to go to trial but simply to obtain the best deal possible for himself.

The State recalled Mr. Thibodeaux, who confirmed that as a prosecutor, his practice was limited to DUI cases. Mr. Thibodeaux acknowledged that he exchanged discovery materials and engaged in plea negotiations with the prosecutor before he withdrew from the Petitioner's case; however, he was not involved in the Petitioner's case in any way once he was employed by the district attorney general's office. In addition, Mr. Thibodeaux said that when he was hired, he specifically spoke with the district attorney general on how to handle his previous cases and was told to provide his former clients with notice of his new employment and to have no more involvement in those investigations or discussions with fellow co-workers about those matters. Though there was never anything in writing, Mr. Thibodeaux described those instructions from the district attorney general as "very clear." Mr. Thibodeaux confirmed that he did have such a conversation with the Petitioner providing him with said notice, and Mr. Thibodeaux affirmed that he never had a conversation with anyone in the district attorney general's office about the Petitioner's case at any time.

At the conclusion of the hearing, the post-conviction court found that the Petitioner had failed to establish ineffective assistance of counsel and concluded that the Petitioner entered his pleas knowingly and voluntarily. Relative to any motion to recuse the district attorney general's office, the post-conviction court noted that screening procedures were in place and that Mr. Thibodeaux testified that he had not discussed the Petitioner's case with any of his co-workers. The post-conviction court found that trial counsel was not deficient in that regard. The post-conviction court memorialized its decision in an order filed August 19, 2020.[5] In the order, the post-conviction court found trial counsel and Mr. Thibodeaux to be credible witnesses. The post-conviction court accredited Mr. Thibodeaux's testimony and found that the filing of a motion to recuse the district attorney general's office would not have changed the outcome of these proceedings. The post-conviction court reiterated that the Petitioner entered his pleas voluntarily and without force or coercion. The Petitioner filed a timely notice of appeal.

## ANALYSIS

On appeal, the Petitioner contends that the post-conviction court erred by denying him relief, arguing that trial counsel was ineffective for failing to file a motion to recuse the district attorney general's office once Mr. Thibodeaux was employed there or, at the

---

[5] The order was subsequently amended to correct a clerical error.

very least, "request[ing] confirmation" that adequate screening procedures had been put in place to protect the Petitioner's confidential information. The Petitioner asserts that trial counsel's subsequent plea negotiations were "tainted by a very clear suggestion of impropriety." The State responds that the post-conviction court's decision should be affirmed because the Petitioner failed to establish any deficient performance or prejudice, noting that Mr. Thibodeaux testified that proper screening procedures were in place and that trial counsel testified that he knew Mr. Thibodeaux was only prosecuting DUI cases and would not be involved in the Petitioner's case.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

As to the prejudice prong, in the context of a guilty plea, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore,

to satisfy the second prong of Strickland, the petitioner must show that "there is reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). See State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our supreme court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). In order to find that the plea was entered "intelligently" or "knowingly," Boykin requires that the trial court "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." Blankenship, 858 S.W.2d at 904 (quoting Boykin, 395 U.S. at 244).

The Petitioner asserts that impropriety was merely "suggested" by Mr. Thibodeaux's employment with the district attorney general's office that occurred "in the midst" of his representation of the Petitioner. The Petitioner, citing Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.10(b)-(d), contends "that proper screening procedures must be put in place" under the circumstances present here or "else such conflicts of interest are imputed to the entire office."

Tennessee Rule of Professional Conduct 1.10, the Rule cited by the Petitioner, is a general rule regarding the vicarious imputation of conflicts of interests, whereas Rule 1.11 is the specialized rule regarding the conflicts of interests of former and current government attorneys, and the principles of construction require the specialized rule to prevail over the general rule. State v Orrick, 592 S.W.3d 877, 889 (Tenn. Crim. App. 2018) (citing Keough v. State, 356 S.W.3d 366, 371 (Tenn. 2011)). "A 'per se rule' of disqualification for a district attorney's office when an assistant district attorney general has a conflict of interests is inappropriate." Id. at 883 (citing Tenn. Bd. Prof. Resp., Formal Op. No. 87-F-111, 1987 WL 1446637, at *2 (Sept. 16, 1987)); see also State v. Thomas Paul Odum, No. E2017-00062-CCA-R3-CD, 2017 WL 5565629, at *6-8 (Tenn. Crim. App. Nov. 20, 2017) (concluding that a "per se disqualification rule based upon the appearance of impropriety" was "more applicable to civil cases" and private attorneys than to criminal cases involving prosecutors). The rule governing disqualification due to either an actual or apparent conflict would not usually bar the entire office from prosecuting a defendant. State v. Tate, 925 S.W.2d 548, 556 (Tenn. Crim. App. 1995).

For purposes of deciding whether a prosecutor or his office should be disqualified from participation in a criminal case, this court and our supreme court have adopted the following analytical framework:

> (1) Do the circumstances of the defendant's case establish an actual conflict of interest that requires the disqualification of a prosecutor?

> (2) Do the circumstances of the defendant's case create an appearance of impropriety that requires the disqualification of a prosecutor?

> (3) If either theory requires the disqualification of a prosecutor, is the entire [d]istrict [a]ttorney [g]eneral's office likewise disqualified?

State v. Coulter, 67 S.W.3d 3, 29 (Tenn. Crim. App. 2001); see also Culbreath, 30 S.W.3d at 312-313; Tate, 925 S.W.2d at 550. A prosecutor's disqualification need not be imputed to the entire district attorney general's office "so long as the attorney at issue does not disclose confidences or otherwise participate in the prosecution." Tate, 925 S.W.2d at 556. When a prosecutor has an actual conflict of interests creating an appearance of impropriety, "[e]arly and adequate screening . . . should resolve [the] problem." Orrick, 592 S.W.3d at 883 (quoting Coulter, 67 S.W.3d at 32).

On this record, Mr. Thibodeaux testified that he met with the Petitioner three or four times during his representation and that they discussed discovery materials and engaged in some plea negotiations; however, Mr. Thibodeaux's representation of the Petitioner lasted a mere six weeks. When Mr. Thibodeaux moved to the district attorney general's office, he worked solely on DUI cases. Mr. Thibodeaux testified that prior to this employment, he and the district attorney general spoke about his private cases and how to handle them, including his providing notice to his clients and not discussing the cases with any of his co-workers; Mr. Thibodeaux confirmed that he did just that in the Petitioner's case. Trial counsel testified that he knew Mr. Thibodeaux was working only in the DUI arena and was not prosecuting charges similar to those pending against the Petitioner. Though trial counsel did not specifically inquire about the screening procedures at the district attorney general's office regarding Mr. Thibodeaux, he believed Mr. Thibodeaux was "a man of great integrity" and trusted Mr. Thibodeaux not to share attorney-client protected information. The post-conviction court accredited the testimony of Mr. Thibodeaux and trial counsel and found that adequate screening procedures were in place. We agree that the Petitioner has not established any deficient performance by trial counsel's failure to file a motion to recuse the district attorney general's office.

Moreover, the post-conviction court found that the outcome of the proceedings would not have been any different had trial counsel filed such a motion. Here, the Petitioner accepted a guilty plea and did not proceed to trial. The Petitioner testified that

he did not want to proceed to trial but merely desired to obtain the best deal possible for himself given the overwhelming evidence against him. Trial counsel obtained a favorable deal for the Petitioner that included concurrent service of the Petitioner's federal sentence and no mandatory minimum sentence or mandatory consecutive service relative to the gun charge. According to trial counsel, this was a "major goal of the representation" of the Petitioner. The Petitioner's main complaint seemed to be with whether the Federal Bureau of Prisons would honor the plea paperwork. We agree with the post-conviction court that the Petitioner entered his pleas voluntarily and without force or coercion. The Petitioner has likewise failed to establish any prejudice. The Petitioner is not entitled to relief on this claim.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE